IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| KENDALL BLAIRE MARR, | § § § | |
| *Plaintiff,* | § § | CIVIL NO. |
| vs. | § § | SA-18-CV-0240-DAE |
| COMMISSIONER OF SOCIAL SECURITY,[1] | § § § | |
| *Defendant.* | § § § | |

**ORDER**

This Order concerns Plaintiff's request for review of the administrative denial of his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). After considering Plaintiff's Opening Brief [#10], Defendant's Brief in Support of the Commissioner's Decision [#11], the transcript ("Tr.") of the Social Security Administration ("SSA") proceedings [#5], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, the Court concludes that the ALJ did not commit any reversible legal error, and substantial evidence supports the Commissioner's ultimate determination that Plaintiff is not disabled.

**I. Jurisdiction**

This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order because the parties have consented to the jurisdiction of a United States Magistrate Judge [#7, #9].

---

[1] Nancy A. Berryhill no longer holds the title of Acting Commissioner, and no other Acting Commissioner has been named. The office of Commissioner is presently vacant, and the caption has been amended accordingly.

1

## II.  Factual Background

Plaintiff Kendall Blaire Marr filed his application for DIB on July 19, 2010, alleging a disability onset date of November 14, 2008.  (Tr. [#5] 135–36.)  At the time of his DIB application, Plaintiff was a 45-year-old male with a college degree in chiropractic medicine.  (Tr. 135, 149.)  Plaintiff has prior work experience as a retail cash supervisor and a chiropractor during the relevant period preceding his claim for benefits.  (Tr. 149.)  The medical conditions upon which Plaintiff based his initial DIB application include cervical degenerative disc disease, disc herniations, right upper extremity radiculopathy, migraines, and depression.  (Tr. 148.)  Plaintiff's initial DIB application complained of severe pain, numbness, and tingling in his right arm, limitations in lifting and basic activities with his respect to his right arm, recurring migraine headaches, and depression. (Tr. 160–61.)

A. **First ALJ Hearing and District Court Decision**

Plaintiff's application for DIB was denied initially on November 18, 2010, and again upon reconsideration on February 10, 2011.  (Tr. 80–81.)  Following the denial of his claim, Plaintiff requested an administrative hearing.  (Tr. 93.)  The ALJ issued an unfavorable decision on February 2, 2012.  (Tr. 16–31.)  The ALJ concluded that Plaintiff was capable of performing his past relevant work as a supervisor as this work was actually performed.  (Tr. 29.)  In the alternative, the ALJ found that Plaintiff could perform work as a parking lot attendant, arcade attendant, and assembler of semi-conductors.  (Tr. 30.)  Accordingly, the ALJ determined that Plaintiff was not disabled, and therefore not entitled to receive DIB.  (Tr. 31.)

Plaintiff requested review of the ALJ's decision, but the Appeals Council denied review on March 26, 2013.  (Tr. 1–5.)  Plaintiff thereafter filed a Complaint seeking review of the Commissioner's unfavorable decision in the United States District Court for the District of

Colorado[2] on May 8, 2013. (Tr. 694–96.) On September 12, 2014, the District Court issued its opinion reversing the Commissioner's decision and remanding for further proceedings and an additional hearing. (Tr. 677–88.) The District Court found that the ALJ's assessment of Plaintiff's credibility was not adequately substantiated, and his own disbelief of Plaintiff's subjective complaints improperly colored other critical aspects of his disability decision, and so it ordered a reassessment of the medical evidence and disability determination. (Tr. 681.)

**B.     February 3, 2015 and June 17, 2015 ALJ Hearings**

Upon remand, Plaintiff and his attorney attended an initial and then a supplemental hearing in Denver, Colorado before ALJ Debra J. Denney on February 3, 2015 (Tr. 582–640) and June 17, 2015 (Tr. 537–81), respectively. Plaintiff, vocational experts ("VE") Cynthia Bartmann and Pat Pauline, and Medical Experts ("ME") Phillip Lee McCown, M.D. and John David Sabow, M.D. testified at the hearings. (Tr. 537–640.) The ALJ issued a decision on July 17, 2015, again finding Plaintiff not disabled. (Tr. 708–23.) The ALJ found Plaintiff was capable of performing work as a bench assembler of small parts, mail clerk, and parking lot attendant. (Tr. 722–23.) Accordingly, the ALJ determined that Plaintiff was not disabled, and therefore not entitled to receive DIB. (Tr. 723.)

Plaintiff requested review of the ALJ's decision, and the Appeals Council granted the request for review and, in a decision dated April 20, 2016, remanded Plaintiff's case to the ALJ. (Tr. 731–35.) The Appeals Council concluded that the ALJ failed to correct the errors identified by the District Court and ordered the District Court on remand to specify the weight given to the opinion of Anthony Euser, D.O., further evaluate Plaintiff's alleged symptoms, and resolve a

---

[2] Plaintiff moved from Oklahoma to Colorado during the pendency of this appeal.

3

conflict between the Dictionary of Occupation Titles ("DOT") and the occupational evidence provided by the vocational expert. (Tr. 731–35.)

**C.      July 26, 2016 ALJ Hearing**

Upon this second remand, Plaintiff and his attorney attended an administrative hearing in Denver, Colorado again before ALJ Debra J. Denney on July 26, 2016. (Tr. 503–35.) Plaintiff and vocational expert ("VE") William Tisdale provided testimony at the hearing. (*Id.*) The ALJ issued another unfavorable decision on October 3, 2016. (Tr. 474–502.) The ALJ found that Plaintiff met the insured status requirements of the SSA, and applied the five-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 14, 2008, the alleged disability onset date, through the date last insured of December 31, 2013. (Tr. 479) At step two, the ALJ found Plaintiff to have the following severe impairments: degenerative disc disease of the cervical spine with radiculopathy, herniated nucleus pulposus in the cervical spine, headaches, and migraines. (Tr. 480–82.) At step three, the ALJ found that, through the date last insured, these impairments did not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations, and therefore Plaintiff was not presumptively disabled. (Tr. 482–83.)

Before reaching step four of the analysis, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: Plaintiff is able to lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, and walk each for six hours in an 8-hour workday with normally allotted work breaks; sit for up to one hour at a time and then would need to change position; reach overhead no more than occasionally on the right side; frequently reach overhead with the left arm; frequently balance, kneel, stoop, crouch, and crawl; frequently perform gross and fine manipulations; but cannot be exposed to

strong perfumes, fumes, or odors. (Tr. 483–93.) Then, considering Plaintiff's age, educational factors, work experience, and RFC, as well as the testimony of the VE, the ALJ found Plaintiff was capable of performing work as a routing clerk, mail clerk, delivery marker, and electronics worker. (Tr. 493–94.) Accordingly, the ALJ determined that Plaintiff was not disabled, and therefore not entitled to receive DIB. (Tr. 494.)

Plaintiff requested review of the ALJ's decision, but the Appeals Council declined review on January 8, 2018. (Tr. 463–70.) On March 13, 2018, Plaintiff filed the instant case in the Western District of Texas,[3] seeking review of the final administrative determination.

### III. Governing Legal Standards

**A.    Standard of Review**

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the ALJ's decision,[4] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990).

Four elements of proof are weighed by the Court in determining if substantial evidence supports the Commissioner's determination: (1) the objective medical facts; (2) the diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and

---

[3] Plaintiff moved from Colorado to Texas during the pendency of this appeal.

[4] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

5

disability; and (4) the claimant's age, education, and work experience. *Martinez*, 64 F.3d at 174. "'[N]o substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the court, to resolve. *Id.*

While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. See *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); *Carr v. Apfel*, 133 F. Supp. 2d 476, 479 (N.D. Tex. 2001).

**B. Entitlement to Benefits.**

The term "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to do his previous work, and cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work that exists in significant amount in the national economy—regardless of whether such work exists in the area in which he lives, whether a specific job vacancy exists, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(a)(1), 1382c(a)(3)(B).

## C. Evaluation Process and Burden of Proof.

As noted above, SSA regulations require that disability claims be evaluated according to a five-step process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2016). In the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means "the performance of work activity involving significant physical or mental abilities for pay or profit." *Newton*, 209 F.3d at 452–53 (citing 20 C.F.R. § 404.1572(a)–(b)). An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of his medical condition, age, education, or work experience. 20 C.F.R. § 404.1520(b).

Then, at the second step, the ALJ determines whether the claimant has a medically determinable physical or mental impairment that is severe or a combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (internal quotation omitted). An individual who does not have a "severe impairment" will not be found to be disabled. 20 C.F.R. § 404.1520(c).

Under the third step, an individual who has an impairment that meets or is medically equal to the criteria of a listed impairment in Appendix 1 ("the Listings") of the regulations will be considered disabled without the consideration of other vocational factors. 20 C.F.R. § 404.1520(d). If the claimant does not qualify under the Listings, the evaluation continues to the fourth step. Before commencing the fourth step, however, the ALJ assesses the claimant's residual functional capacity ("RFC"), which is a "multidimensional description of the work-related

abilities" a claimant retains despite medical impairments. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. *See also* 20 C.F.R. § 404.1520(e); *Perez v. Barnhart*, 415 F.3d 457, 461–62 (5th Cir. 2005).

At the fourth step, the ALJ reviews the RFC assessment and the demands of his past relevant work. 20 C.F.R. § 404.1520(f). If an individual is capable of performing the work he has done in the past, a finding of "not disabled" will be made. *Id.* If an individual's impairment precludes him from performing his past relevant work, the fifth and final step evaluates the claimant's ability—given the claimant's residual capacities, age, education, and work experience—to do other work. 20 C.F.R. § 404.1520(g). If a claimant's impairment precludes him from performing any other type of work, he will be found to be disabled. *Id.*

The claimant bears the burden of proof at the first four steps of the evaluation process. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Once the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform that work. *Anderson v. Sullivan*, 887 F.2d 630, 632–33 (5th Cir. 1989). A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## IV. Analysis

Plaintiff claims the following points of error in the ALJ's October 3, 2016 opinion: (1) the ALJ failed to include limitations related to Plaintiff's mental impairments in her RFC analysis; (2)

the ALJ failed to apply the proper standards in evaluating the medical opinion evidence in the record; and (3) the ALJ failed to reconcile the discrepancy between the DOT and the testimony of the VE regarding the light-duty jobs cited at step five, as ordered on remand. Having considered the arguments of the parties, the record in this case, and the governing law, the Court finds that the ALJ did not commit any reversible legal error, and substantial evidence supports the Commissioner's determination that Plaintiff is not disabled.

A. **Substantial evidence supports the ALJ's decision not to include any mental limitations in Plaintiff's RFC.**

Plaintiff contends that the ALJ erred by not considering the mental limitations stemming from his adjustment disorder in determining his RFC. In other words, Plaintiff argues that the ALJ's RFC was not based on substantial evidence because it did not account for all of Plaintiff's limitations. Upon review of the ALJ's opinion and the record in this case, the Court disagrees.

An RFC determination is the most an individual can still do despite his limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments in the record, regardless of whether those impairments are severe or non-severe. *Id.* at § 404.1545(a)(1)–(3). The relative weight to be given the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*, 269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). The ALJ is not required to incorporate limitations in the RFC that he or she did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam).

The ALJ did not include any mental limitations in Plaintiff's RFC after she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence." (Tr. 483.) Although the ALJ did not discuss the medical evidence with respect to Plaintiff's mental limitations in the section of her opinion on Plaintiff's

9

RFC, she engaged in a thorough discussion of the mental-health evidence in determining whether Plaintiff's claimed mental limitations constituted a severe impairment under step two. (Tr. 480–82.) In doing so, the ALJ acknowledged Plaintiff's history of depression and reviewed the medical records implicating his mental health during the relevant period in detail.[5] (Tr. 480–82.)

The ALJ ultimately concluded that the medical evidence showed that prior to December 31, 2013 (the date of last insured), Plaintiff's adjustment disorder was mild and did not significantly affect his ability to work. (Tr. 480.) Specifically, the ALJ explained that the medical records documented that Plaintiff had been prescribed antidepressant medication since before the alleged disability onset date; that his mild symptoms responded positively to medication; and that he had not pursued any other treatment such as mental-health therapy. (Tr. 480) Indeed, by September 2013, the record reflects that Plaintiff was reporting "no depression" and "no sleep disturbances" to his primary care physician, and in October 2013 reported that these symptoms had "improved while on medications." (Tr. 1056, 1060.) The ALJ also found that Plaintiff suffered from no more than mild limitations with respect to the four functional areas of limitation set forth in the paragraph B criteria.[6] (Tr. 481–82.) In closing her step two analysis, the ALJ explained that

---

[5] The relevant period for Plaintiff's Title II disability claim is from November 14, 2008—Plaintiff's alleged disability onset date—through December 31, 2013—the date Plaintiff's insured status for Title II disability insurance benefits expired. *See Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992); 20 C.F.R. § 404.131.

[6] The Paragraph B criteria are a list of four functional areas generally utilized for evaluating mental impairments at all levels of the administrative review process: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. § 404.1520a(c)(3) (effective Jan. 17, 2017 to Mar. 27, 2017); 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Prior to January 17, 2017, the four functional areas were (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. According to the supplementary information in the Federal Register, the federal courts are to review any final decisions "using the rules that were in effect at the time [the ALJ] issued the decisions." 81 Fed. Reg. 66,138 (Sept. 26, 2016). Because the ALJ issued her opinion on October 3, 2016, the pre-amendment version of the regulation governs.

her RFC assessment that followed "reflects the degree of limitation [she] found in the 'paragraph B' mental function analysis," which was a finding of minimal to no limitations. (Tr. 482.) In light of these findings, the ALJ was not required to incorporate any mental limitations in her RFC determination. *See Morris*, 864 F.2d at 336.

The only medical evidence that Plaintiff cites in his brief that was ostensibly not considered by the ALJ is the opinion of Dr. Anthony Euser—one of Plaintiff's treating physicians—that Plaintiff would be expected to be off task at any job 25% of the time due to his lack of focus. (Pl.'s Brief [#10] at 10; Tr. 1072–76.) The document referenced is a medical source statement completed by Dr. Euser on December 9, 2014, almost one year after the relevant period. Although Dr. Euser did treat Plaintiff for several months prior to the date of last insured, the majority of his treatment of Plaintiff was outside of the relevant period, and so is not relevant to the ALJ's analysis. *See Torres v. Shalala*, 48 F.3d 887, 894 n.12 (5th Cir. 1995) (evidence showing a degeneration of a claimant's condition after the date of last insured is not relevant to the ALJ's analysis in a claim for Title II benefits).

Moreover, even if this assessment did pertain to the relevant period, it was not reversible error for the ALJ not to specifically address this piece of evidence in her opinion, in light of the extensive discussion of Plaintiff's mental impairments and review of other evidence in the record. *See Penalver v. Barnhart*, No. SA-04-CA-1107-RF, 2005 WL 2137900, at *6 (W.D. Tex. July 13, 2005) ("The ALJ may not have discussed all of the evidence in the record to the extent desired by Plaintiff, but the ALJ is only required to make clear the basis of his assessment—he need not discuss all supporting evidence or evidence rejected."). It is worth noting, also, that the ALJ did discuss the December 2014 opinion of Dr. Euser elsewhere in his opinion and explained his reasons for giving the opinion lesser weight. *See infra* at IV.B. Accordingly, Plaintiff has failed to carry

11

his burden to demonstrate that the ALJ failed to consider all the relevant evidence on Plaintiff's mental limitations or that the ALJ's RFC was not supported by substantial evidence. This point of error is not a basis for reversal and remand.

**B.      The ALJ did not err in evaluating the medical opinion evidence in the record and at the hearing.**

Plaintiff's second point of error argues that the ALJ failed to adequately explain the weight given to various medical source opinions, namely the opinions of Dr. Luther Woodcock (a physician with the state Disability Determination Service), Dr. Sean Neely (another DDS physician), Dr. Euser (a treating physician), Dr. McCown (a medical expert testifying at the ALJ's February 3, 2015 hearing), and Dr. Sabow (a medical expert testifying at the June 17, 2015 hearing). Only one of these medical opinions constitutes a treating source, that of Dr. Euser. Because of the unique rules pertaining to treating sources, the Court will first consider the ALJ's treatment of Dr. Euser's opinions.

    i.    <u>Dr. Euser</u>

The treating-source rule provides that an ALJ should give great weight to the opinion of a treating physician who is familiar with a claimant's medical condition and impairments.[7] *Perez v. Barnhart*, 415 F.3d 457, 465–66 (5th Cir. 2005). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . .

---

[7] The Social Security Administration published a new rule, applicable to claims filed on or after March 27, 2017, that eliminated the rule that treating sources be given controlling weight. *See* 20 C.F.R. § 404.1520c (effective Mar. 27, 2017). The pre-amendment version of the rule applies to Plaintiff's case. *See* 20 C.F.R. § 404.1527(a)(2) (effective Aug. 24, 2012 to Mar. 26, 2017 (defining treating-source rule).

. other substantial evidence.'" *Newton*, 209 F.3d at 455 (citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)); *see also* 20 C.F.R. § 404.1527(c)(2).

Nonetheless, an "ALJ is free to reject the opinion of *any* physician when the evidence supports a contrary conclusion." *Lackey v. Shalala*, 40 F.3d 384, 384 (5th Cir. 1994) (emphasis added). A treating physician's opinion "may be assigned little or no weight when good cause is shown," such as where "the physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 455–56 (citing *Greenspan v. Shalala*, 37 F.3d 232, 237 (5th Cir. 1994)). The Fifth Circuit in *Newton* held that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."[8] *Newton*, 209 F.3d at 453 (emphasis in original). These criteria include:

(1) the physician's length of treatment of the claimant and frequency of examination;

(2) the nature and extent of the treatment relationship;

(3) the support of the physician's opinion afforded by the medical evidence of record;

(4) the consistency of the opinion with the record as a whole;

(5) the specialization of the treating physician;

(6) any other factors which tend to support or contradict the opinion.

*Newton*, 209 F.3d at 456; 20 C.F.R. § 404.1527(c)(2).

---

[8] 20 C.F.R. § 404.1527 has been revised several times since the Fifth Circuit's opinions in *Newton* and in *Martinez* and the court's reference to subsection (d)(2) refers to the factors at subsection (c)(2) of 20 C.F.R. § 404.1527 at the time of the ALJ's opinion. *Compare* 20 C.F.R. § 404.1527 (effective to July 31, 2006) *with* 20 C.F.R. § 404.1527 (effective Aug. 24, 2012 to Mar. 26, 2017) and 20 C.F.R. § 404.1527 (effective Mar. 27, 2017).

Here, the ALJ gave lesser weight to the opinion of Dr. Euser, which if accepted, according to the ALJ, would support a finding of disability. (Tr. 490–91.) In doing so, the ALJ noted that Dr. Euser began treating Plaintiff in July 2013, just six months prior to the expiration of the relevant period for DIB. (Tr. 491.) She reviewed Dr. Euser's treatment records and compared them for consistency with the record as a whole, as well as compared Dr. Euser's opinions with his own medical evidence of record. (Tr. 486–87.) For example, the ALJ explained that although Dr. Euser at times noted tenderness, pain, and limited range of motion in an unspecified location in his exams of Plaintiff, he also repeatedly documented that Plaintiff exhibited normal ambulation, full range of motion in his neck, normal motor strength and tone, normal movement in extremities, normal gait, and intact reflexes and sensation. (Tr. 486, 1036–45.) The ALJ also found significant that Dr. Euser documented Plaintiff's positive response to various medications for pain management and that Plaintiff had not followed his treating physician's recommendation to see a pain specialist or participate in physical therapy. (Tr. 486, 1088.)

The ALJ also reviewed many of the conclusions contained in Dr. Euser's December 2014 medical source statement and rejected each one by citing to specific contradictory information contained in Dr. Euser's own treatment records and other medical opinions in the record. (Tr. 491.) For example, the ALJ found that Dr. Euser's opinion that Plaintiff has muscle atrophy was not supported by the medical evidence during the relevant period, citing to Dr. Euser's treatment records that reflect Plaintiff's normal sensation and full bilateral reflexes. (Tr. 491, 1036–45, 1072.) Nor did the ALJ find sufficient support for Dr. Euser's conclusion that Plaintiff cannot sit, stand, or walk more than two hours in a workday, when Plaintiff himself testified at the July 26, 2016 hearing that he had no problem walking, can stand "for a while," and can sit, though ideally resting his right arm on something (Tr. 491, 517–18.) Based on these references and the evidence

as a whole, the ALJ did not adopt Dr. Euser's December 2014 opinion that Plaintiff's neck and upper extremity symptoms essentially precluded all work prior to the date last insured and instead limited Plaintiff to light exertion work. (Tr. 486.) In summary, the ALJ thoroughly considered Dr. Euser's opinions in light of the *Newton* factors, and substantial evidence supports the ALJ's treatment of Dr. Euser's medical records.

    ii.    <u>Dr. Woodcock and Dr. Neely</u>

The ALJ gave moderate weight to the opinions of Dr. Woodcock and Dr. Neely, both of whom are non-examining DDS medical consultants. (Tr. 490.) Dr. Woodcock assessed Plaintiff based on a review of his medical records in November 2010 and opined that Plaintiff could perform light exertion work but should avoid reaching, including overhead, with his right arm. (Tr. 392–99.) On reconsideration in February 2011, Dr. Neely affirmed Dr. Woodcock's conclusions. (Tr. 401.) Plaintiff complains that the ALJ did not explain sufficiently which parts of Dr. Woodcock and Dr. Neely's opinions were accepted and why. The Court disagrees.

As to non-treating medical opinions, the only requirement is that the ALJ "consider the medical opinions in [the] case record together with the rest of the relevant evidence." 20 C.F.R. 404.1527(b). Physicians conducting one-time consultative examinations are not due special deference; nor is the ALJ required to explain in detail his reasons for rejecting a non-treating physician. *See Robinson v. Astrue*, 271 Fed. App'x 394, 396 (5th Cir. 2008) ("Wong performed a one-time consultative examination of Robinson and therefore is not due special deference as a treating physician."); *Gomez v. Barnhart*, No. CIV.A. SA-03-CA-1285-XR, 2004 WL 2512801, at *2 (W.D. Tex. Nov. 5, 2004) ("Social Security Ruling (SSR) 96–6p and 20 CFR §§ 404.1527 and 416.927 merely require that the ALJ and Appeals Council reflect that consideration was given to any medical consultant's opinion."). In reviewing Dr. Woodcock's and Dr. Neely's

assessments, the ALJ acknowledged that a substantial amount of medical evidence had been produced since the time these opinions were rendered, but nonetheless concluded that the weight of this evidence generally supported the DDS assessment for light exertion work. (Tr. 490.) The ALJ complied with the procedural requirements to consider the medical opinions of record and sufficiently explained in over ten pages of detailed discussion of the medical records why she gave moderate weight to the conclusion that Plaintiff could engage in light exertional work with some limitations. Plaintiff has not identified any reversible error with respect to the ALJ's treatment of these medical opinions.

      iii.      <u>Dr. McCown and Dr. Sabow</u>

The ALJ gave "reasonable weight" to the hearing testimony of Dr. McCown, an orthopedic surgeon, and Dr. Sabow, a neurologist, both of whom testified as medical experts at Plaintiff's administrative hearings on February 3, 2015 and June 17, 2015, respectively. (Tr. 492, 548–66, 597–608.) In the Fifth Circuit, the ALJ has broad discretion in determining the credibility of medical experts and to weight their opinions and testimony accordingly. *Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir. 1990).

Here, the ALJ discussed in detail the opinion of Dr. McCown that Plaintiff's spinal degeneration is common for people of his age; the records do not show any serious or abnormal neurological changes; despite tenderness in the neck, Plaintiff is not restricted from looking upward; and the medical evidence does not support a diagnosis of radiculopathy (irritation of or injury to the nerve root). (Tr. 491–92, 597–608.) The ALJ also discussed the opinion of Dr. Sabow that the medical examinations of record do not show muscle atrophy or weakness; Plaintiff has intact right hand grip and normal reflexes in the upper extremities; there is no functional limitation stemming from Plaintiff's cervical spondylosis; Plaintiff's complaints do not correlate with the

findings in the record; and there is no evidence of severe, intractable, and debilitating migraines. (Tr. 492, 548–66.) The ALJ also gave specific reasons for giving weight to these opinions: that these physicians are specialists in the areas of Plaintiff's particular impairments; had the opportunity to review all of the medical evidence that had been submitted; and they both provided extensive testimony, responded to questions by Plaintiff's attorney on cross examination, and identified specific references to the medical evidence to support their opinions. (Tr. 492.)

Despite these explanations, Plaintiff complains that there is no indication as to which opinions of these experts, if any, were rejected or excluded. The Court disagrees. The ALJ plainly adopted the majority of these opinions in formulating her RFC for Plaintiff, with the exception of Dr. Sabow's dismissal of Plaintiff's migraine complaints, as the RFC contains limitations on exposure to perfumes, fumes, and odors, and Dr. Sabow's conclusion that Plaintiff has no exertional limitations, as the RFC limits Plaintiff to only occasional overhead reaching on the right side. (Tr. 483.) Plaintiff has not raised any basis for reversible error as to the ALJ's treatment of the testifying medical experts.

**C.    The ALJ properly relied on the testimony of the VE regarding Plaintiff's ability to perform certain light-duty jobs at step five.**

Plaintiff's final point of error argues that the ALJ failed to reconcile the discrepancy between the DOT and the testimony of the VE regarding the light-duty jobs cited at step five, as ordered on remand. Plaintiff contends that the jobs identified by the VE cannot be performed by someone with the RFC given to Plaintiff, as the DOT indicates they all require frequent reaching and handling, whereas Plaintiff can reach overhead "no more than occasionally."

The Appeals Council remanded Plaintiff's claims to the ALJ with instructions to reconcile an identified conflict between the ALJ's July 17, 2015 decision finding that Plaintiff could reach overhead with the right upper extremity no more than occasionally and could reach with the left

17

upper extremity no more than frequently and the ALJ's finding that Plaintiff could perform certain jobs that, according to the DOT, require frequent bilateral reaching. (Tr. 734.) The conflict was not acknowledged in the ALJ's previous decision, nor did the VE at the ALJ's February 3, 2015 and June 17, 2015 hearings address the conflict. (Tr. 734.)

At the July 26, 2015 hearing upon remand, VE William Tisdale testified that an individual with Plaintiff's RFC for only occasional overheard right-arm reaching but frequent overhead left-arm reaching[9] could work in the following positions characterized as light work: routing clerk, mail clerk, and cashier. (Tr. 528–29.) The ALJ then questioned the VE as to whether the limitation on overhead reaching would affect the position of mail clerk, and the VE specified that this position would not require frequent overhead reaching, as the position most critically required reaching out and forward. (Tr. 529.) The VE then acknowledged that the DOT codes the positions of routing clerk and cashier as both requiring "frequent reaching," but the VE believed this reaching to be "forward as an outward motion as opposed to overhead reach." (Tr. 530.) The VE testified that, based on his professional experience in having seen these jobs performed, the occasional limitation on overhead reaching would be sufficient for both of these jobs. (Tr. 530.) Finally, the VE testified that an individual with Plaintiff's limitations, including an additional limitation regarding fumes and odors, could also perform the work of a delivery marker or electronics worker, and that based on his personal experience neither of these positions would present an issue with Plaintiff's overhead reaching limitation. (Tr. 531–32.) Plaintiff's attorney declined to ask any additional questions of the VE to further develop this testimony. (Tr. 534.)

---

[9] The revised RFC upon remand provides for less limitations as to left-arm reaching than the previous RFC by the same ALJ.

18

Plaintiff now argues that the ALJ failed to reconcile the light-duty jobs referenced above with the overhead reaching limitations contained in Plaintiff's RFC because the VE's testimony did not adequately address the identified discrepancy and the VE improperly altered the definition of "reaching" to conform to his own way of thinking. This argument is without merit.

The Fifth Circuit has repeatedly noted that "[t]he value of a vocational expert is that he [or she] is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)); *see also Vaughan v. Shalala*, 58 F.3d 129 (5th Cir. 1995). And the Fifth Circuit has "recognized that the DOT is not comprehensive, in that it cannot and does not purport to include each and every specific skill or qualification for a particular job. *Carey*, 230 F.3d at 144. Furthermore, "the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job." *Id.* at 145.

Here, the VE was specifically asked about the presumed conflict between the DOT codes and Plaintiff's overhead reaching limitations. In response, the VE testified that in his personal and professional experience the jobs he identified did not require overhead reaching and, accordingly, there was no conflict between the DOT and the VE's testimony. Moreover, Plaintiff did not challenge this testimony or ask any additional questions to clarify the VE's opinions. Accordingly, the Court finds the VE's testimony to be sufficient, and the ALJ did not err in relying upon the VE's testimony in making her disability determination. *See id.* at 147 (finding "the vocational expert's clear and unchallenged testimony that Carey could perform the identified jobs with one

arm and hand" as "adequate" and declining to reverse the Commissioner's determination on the basis of an implied conflict between the VE's testimony and the DOT).

## V. Conclusion

Based on the foregoing, **IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **AFFIRMED**.

SIGNED this 14th day of March, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE